**LITTLE ROCK SCHOOL DISTRICT, Plaintiff,**

v.

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT NO. 1, et al., Defendants,**

**Mrs. Lorene Joshua, et al., Katherine W. Knight, et al., Intervenors.**

**No. LR–C–82–866.**

United States District Court, E.D. Arkansas, W.D.

Nov. 15, 1991.

Christopher Heller, Little Rock, Ark., for Little Rock School Dist.

Samuel M. Jones, III, Little Rock, Ark., for Pulaski County Special School Dist.

Stephen W. Jones, Little Rock, Ark., for North Little Rock School Dist.

John W. Walker, Little Rock, Ark., for Mrs. Lorene Joshua, et al., intervenors.

Richard Roachell, Little Rock, Ark., for Katherine W. Knight, et al., intervenors.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

The parties ask the Court to extend certain millages in the three school districts that are scheduled to expire between the years 1995 and 2003. These millages were not included in a previous order signed by Judge Henry Woods and filed on January 7, 1987, which rededicated and extended various school millages due to expire on or before December 31, 2007. For the reasons explained below, the Court finds that the parties' motion should be and hereby is denied.

On December 24, 1986, the Little Rock School District (LRSD), Pulaski County Special School District (PCSSD), and the North Little Rock School District (NLRSD) filed a joint motion to continue at least until the year 2007 the following millages dedicated to retirement of bonded indebtedness: for the LRSD, 2.74 mills due to ex-

pire between 1988 and 1994; for the PCSSD, 9.99 mills due to expire between 1987 and 1994; and for the NLRSD, 4.98 mills due to expire between 1988 and 1996.[1] Five days later, on December 29, 1986, Judge Woods issued an order approving the continuation of the millage amounts, which he later rescinded and then reinstated on January 7, 1987. The order extended each millage

> until at least the collection year 2007 and beyond if the school district elects to convert the millage from debt retirement to maintenance and operation, or as otherwise ordered by the Court. In the event the school district converts the millage to maintenance and operation, it shall continue in the same manner as all other maintenance and operation millage and will continue until changed in accordance with state law.

*Little Rock School District v. Pulaski County Special School District No. 1,* No. LR–C–82–866, slip op. at 2 (E.D.Ark. Dec. 29, 1986).

The attorney who drafted the order for Judge Woods inadvertently did not include *all* of the millages due to expire before or during the year 2007. At a hearing on September 26, 1989, then Special Master Aubrey McCutcheon requested that the parties prepare a new order to extend the millages omitted from the initial order. A lengthy discussion concerning the millages ensued, focusing on whether a federal court has the power to rededicate a millage, especially if that millage is not going to be used to fund desegregation. *See* Transcript of Hearing on Proposed Amended Settlement Agreement at 199–215. According to the parties, the proposed order was prepared and submitted to Mr. McCutcheon on September 27, 1989.

Judge Woods, however, says that no new motion or order was ever submitted to him to correct the earlier omission, nor was it included in Mr. McCutcheon's recommendations to him (see Exhibit A to this Order).

In fact, as Judge Woods points out, Mr. McCutcheon recommended that

> [t]he parties' Agreement to petition for rededication of millages erroneously omitted from the petitions of December, 1986, and January, 1987, should be granted only on condition that this court's ordered [sic] regarding desegregation requirements be accepted and implementation commenced no later than July 1, 1989. Without such conditions the court will place the public in a position of having millages rededicated without assurance that the money raised will be used to comply with orders of the court.

*Little Rock School District v. Pulaski County Special School District No. 1,* 716 F.Supp. 1162, 1188 (E.D.Ark.1989) (Exhibit C to Judge Woods' opinion of June 27, 1989 setting forth findings and recommendations of the special master). Judge Woods indicates that these conditions were not complied with, and that no recommendation concerning millage extensions were included in the October 4, 1989 recommendations from Mr. McCutcheon.

The "Agreement" referred to in Mr. McCutcheon's recommendation appears as a provision in the settlement agreement with the State of Arkansas, which was approved by the court of appeals on December 12, 1990. It states:

> The court ordered on December 29, 1986 (reinstated on Jan. 7, 1987) the rededication of certain millages of the Districts. It was the intent of the Districts and the court that all millages due to expire before the year 2007 be rededicated. The motion seeking the extension, however, failed to list all of the millages and consequently not all of the millages sought to be rededicated have actually been rededicated. The parties agree that the court's order of December 29, 1986 (reinstated January 7, 1987) should be corrected to include all millages of the Districts which would otherwise expire before or during the year 2007. Pursuant to this settlement, a corrected order has been submitted to the court for approval

---

1. These millage amounts reflect the reduction required by Amendment 59 to the Arkansas Constitution. The pre-amendment amounts were 5 mills for the LRSD, 17 mills for the PCSSD, and 9.5 mills for the NLRSD.

following final approval of the settlement. Upon approval, the order will be delivered to the responsible county officials.

Pulaski County School Desegregation Case Settlement Agreement (March 1989) at 10–11.

The timing of the present request to extend the omitted millages is prompted, in part, by the PCSSD's need to market bonds to acquire a site for the proposed interdistrict school in the Crystal Hill area. However, the parties also ask this Court to find that "[t]he continuation of all millages due to expire before 2007 are necessary to raise funds for implementation of the districts' respective desegregation plans," and that "continuation of these [desegregation] programs for the long-term will depend on the availability of the monies from the rededicated millages and other sources." Proposed Order at 1–2.

### I.

It may be helpful out the outset to clear up any confusion over the nature of the requested relief. The parties say they are *not* asking the Court to raise taxes. Instead, they simply want the Court to correct a "clerical mistake" in Judge Woods' previous order. Extending the omitted millages, in their view, does not constitute a raise in the amount or rate of tax.

Of course it does. Without the extension, the rate or amount of tax would decrease. To extend a millage is to impose a tax that would not exist but for the extension. The "rededication" of millages involves making permanent what was voted as a temporary tax for a specific purpose. For example, a millage approved by voters to support a bond issue to pay for a specific school, if extended, would continue to be collected *after* the school is paid for. This is a convenient subtlety—the taxpayer likely will not notice the increase, since he will pay the same amount or rate of tax after the extension as before. Still, such an act, in effect, raises taxes. It makes little difference whether Court extends an old tax or creates a new one; the taxpayer still pays more. The parties twist words, then,

when they suggest that rededication of the omitted millages will not raise taxes.

### II.

■ Before turning to whether the millage rededication is permissible under *Missouri v. Jenkins,* 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990), and *Liddell v. Missouri,* 731 F.2d 1294 (8th Cir.) (*Liddell VII*), *cert. denied sub nom. Leggett v. Liddell,* 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984), two arguments advanced in favor of the extension must be considered. The parties argue that the omitted millages were not included in Judge Woods' order due to inadvertence, thus constituting a "clerical mistake" under Rule 60(a) of the Federal Rules of Civil Procedure. Rule 60(a) provides in part that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party." (What the parties seek to correct actually is not a "clerical mistake" under Rule 60(a), but an "error" supposedly arising from oversight or omission.) They claim that Judge Woods originally intended to rededicate *all* millages due to expire before or during 2007, but attorney error resulted in a request for some, not all, to be extended.

There is nothing ambiguous or uncertain about Judge Woods' December 29 order. It refers to "continuation of *various* millage amounts" and rededication of "the *following* millages." *Little Rock School District v. Pulaski County Special School District No. 1,* No. LR–C–82–866, slip op. at 1–2 (E.D.Ark. Dec. 29, 1986) (emphasis added). It does not purport to rededicate *all* the millages. More significant is the failure to correct the "mistake" by subsequent order, as permitted under Rule 60(a) on either the court's own initiative or motion of the parties. The three districts never filed a new motion to correct the earlier omission, nor was a simple correction due to error included in Mr. McCutcheon's recommendations to Judge Woods. In fact, as noted above, the special master

recommended that any extension of the omitted millages be conditioned upon acceptance and commencement of implementation of the court's desegregation requirements no later than July 1, 1989. Even if Judge Woods intended at the time he signed the December 29 order to extend all, rather than some, of the millages, subsequent events demonstrate that the omission took on a significance of its own, and was not treated as a mere clerical mistake or scrivener's error.

■ The parties also urge that a rededication of the omitted millages is necessary to implement the court of appeals' mandate approving the settlement agreement, which, as explained above, includes a provision that reads in part, "[t]he parties agree that the court's order of December 29, 1986 (reinstated January 7, 1987) should be corrected to include all millages of the Districts which would otherwise expire before or during the year 2007." The court of appeals, however, while approving the entire agreement, did not mention this particular provision in its December 12, 1990 opinion. *See Little Rock School District v. Pulaski County Special School District No. 1*, 921 F.2d 1371 (8th Cir.1990). It is unlikely the court of appeals would so casually accept without comment such judicial interference in taxation, since "the imposition of a tax increase by a federal court [is] an extraordinary event." *Jenkins*, 110 S.Ct. at 1663. Thus, it would be unwise to infer from the court of appeals' approval of the settlement agreement that this Court is *required* to extend the omitted millages. The matter is still within the discretion of this Court, and must be decided under the requirements of *Jenkins* and *Liddell VII*.

### III.

■ In *Jenkins* the Supreme Court considered whether a federal district court's broad equitable powers to desegregate school systems include the power to impose a property tax directly upon local constituents in order to finance the court-ordered desegregation remedy, even though the tax would violate state law. All nine justices agreed that the district court had abused

its discretion when it imposed the tax increase directly; five justices, however, held that the district court could enjoin the operation of state laws preventing the local school district from raising property taxes on its own beyond a certain limit and order the school district itself to impose such a tax. The majority reasoned that the difference between the two is more than formal: "[a]uthorizing and directing local government institutions to devise and implement remedies not only protects the function of those institutions but, to the extent possible, also places the responsibility for solutions to the problems of segregation upon those who have themselves created the problems." 110 S.Ct. at 1663.

Before taking such a drastic step, however, the Supreme Court said that a district court must assure itself that no permissible alternative will accomplish the required task. *Id.* The Eighth Circuit embraced a similar standard in *Liddell VII*: "[l]imitations on this [taxing] power require that it be exercised only after exploration of every other fiscal alternative." 731 F.2d at 1320. Thus, under *Liddell VII*, a district court is required to make a factual finding that "all other fiscal alternatives [are] unavailable or insufficient," *id.* at 1323, before ordering an increase in local tax levies on real estate. No such factual finding has been made relating to the present motion. This is because, as explained below, this Court does not have the power, as a matter of law, to order the extension of the millages. Thus, for the purposes of this order only, the Court will assume that no other fiscal alternatives are available or sufficient to finance the desegregation plans approved by the court of appeals.

### IV.

■ What the parties ask of this Court falls outside its narrowly-defined power under federal law to order a local school district to increase taxes. In *Jenkins* the Kansas City, Missouri, School District (KCMSD) was authorized by state law to assess local property taxes up to $1.25 per $100 of assessed valuation unless the majority of the voters in the district approved

a higher levy, up to $3.25 per $100. The levy could be raised above $3.25 only if two-thirds of the voters agreed. The majority held that the district court could enjoin the operation of state laws that prevented the KCMSD from raising the property taxes on its own beyond the prescribed limits, and order the KCMSD to levy taxes adequate to fund its obligations under the court-ordered desegregation plan. Only certain local governmental institutions, however, are subject to such an order. Specifically, the Court said that "a local government *with taxing authority* may be ordered to levy taxes in excess of the limit set by state statute where there is reason based in the Constitution for not observing the statutory limitation." 110 S.Ct. at 1666 (emphasis added). Thus, *Jenkins* permits a federal district court to order a local government body to raise taxes only when that body has *some* authority to tax, but cannot impose the needed taxes due to the operation of certain limitations on that authority under state law.[2] Otherwise, for the reasons so eloquently stated by the concurring Justices in *Jenkins, see* 110 S.Ct. at 1667–79, a district court does not have the power under Article III of the Constitution to impose or increase taxes, either directly or through delegation to a local government body. This reading of *Jenkins* is borne out by those cases cited by the majority in support of its holding. For example, in *Griffin v. Prince Edward County School Bd.,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), a district court faced with a county's attempt to avoid desegregation of the public schools by refusing to operate those schools could "require the [County] Supervisors to exercise *the power that is theirs* to levy taxes to raise funds adequate to reopen, operate, and maintain without racial discrimination a public school system." *Id.* 377 U.S. at 233, 84 S.Ct. at 1234 (emphasis added). *See*

*also Von Hoffman v. City of Quincy,* 4 Wall. 535, 18 L.Ed. 403 (1867) (once subsequent state statute limiting city's power of taxation was held unconstitutional under the Contracts Clause, original authority to tax remained and city could be ordered to levy the necessary taxes to pay interest coupons then due).

In contrast to the Missouri law at issue in *Jenkins,* Arkansas law does not does not place *any* taxing authority in the hands of local school boards. School millages are approved only by the voters after such measures are placed on the ballot by the school boards. Ark. Const. art. XIV, § 3; Ark.Code Ann. §§ 26–80–102, 26–80–110. There are no analogous state laws to enjoin. Since school districts in Arkansas do not possess the power to tax, no state laws operate to "curtail" or "prevent" them from exercising that power. *See Jenkins,* 110 S.Ct. at 1663 (the KCMSD was "ready, willing, and—but for the operation of state law curtailing [its] powers—able to remedy the deprivation of constitutional rights [itself]," and district court could have "enjoined the operation of state laws that would have prevented KCMSD from exercising this power"). Unless extended by the voters, the millages will expire of their own accord. To extend the millages by court order, the Court's power must operate directly on the millages themselves— something expressly prohibited by *Jenkins.*[3]

## V.

 One final consideration must be mentioned. The parties are not operating under a remedial decree designed and imposed by the court. Rather, they have entered into a comprehensive settlement of this case which has been approved by the court of appeals. As part of the settlement, the three school districts have agreed to implement detailed plans, devised by the

---

2. The Eighth Circuit observed in *Jenkins by Agyei v. Missouri,* 855 F.2d 1295, 1311–12 (8th Cir.1988), that "[a]mong the several sources of funds available to KCMSD under Missouri law, only the tax on real and personal property located within the district *is under the school board's control.* Substantial limitations are placed on this tax by the state constitution and statutes (emphasis added)."

3. It is this fact which distinguishes the millage extension from the roll-back provisions of the Hancock Amendment in *Jenkins.* Accordingly, the parties' attempt to analogize the two is unpersuasive.

parties themselves, for achieving desegregation. The court of appeals examined these plans and concluded that they are "reasonable, good-faith efforts to solve seemingly intractable problems ... [embodying] significant relief for the plaintiff class," 921 F.2d at 1388, and provide a "constitutionally accepted level of relief," *id.* at 1390.

These settlement plans are not the *only* possible cure for the constitutional violations found in this case. The unique nature of the judicial taxing power defined in *Jenkins* and *Liddell VII* demands that this remedy be used as a last resort. A taxation order, therefore, should not be issued unless and until it has been determined that there is no alternative remedial plan that would address the constitutional violations without causing a funding crisis. In this respect, more than just *funding* alternatives must be considered.

This does not alter the court of appeals' most recent admonition "dispel[ling] ... any notion that an asserted lack of funds on the part of any of the three school districts would justify a reduction in their commitment to desegregation represented in the 1989 plan." *Little Rock School District v. Pulaski County Special School District No. 1,* 949 F.2d 253 (8th Cir.1991). It is simply to say that, given a choice, judicial taxation should not be preferred over a less costly, but constitutional remedial plan. This is especially true in cases involving consent decrees, since the parties should not be allowed to negotiate and then operate under a settlement plan than can be funded only by resorting to court-ordered taxation.

IT IS SO ORDERED.

## EXHIBIT A

## UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

U.S. POST OFFICE & COURT HOUSE

P.O. Box 3683

LITTLE ROCK, ARKANSAS 72203

August 14, 1991

The Honorable Susan Webber Wright

United States District Judge

304 Post Office & Courts Building

Little Rock, Arkansas 72201

Re: Little Rock School v. Pulaski County Special School District, et al., No. LR–C–82–866

Dear Judge Wright:

Last week the *Arkansas Gazette* in its report of a hearing which you held on the plans for the three local school districts contained this statement: "The parties contend that the extension was granted in the settlement plan and inadvertently left out of a 1986 court order by Judge Henry Woods." This statement was repeated by Mr. Sam Jones in today's *Gazette* in a story about his advising the Pulaski County Special School District to appeal your order and the district's decision to take the appeal.

These statements are incorrect, as is demonstrated by Mr. Jones' letter to you of July 24, 1991. This letter contains the following statements with regard to the millage extensions: "Unfortunately, one of the former attorneys who drafted the order for the Court did not include all of the millages due to expire before the year 2007." His letter also sets out paragraph M of the settlement agreement which contains the following statement: "The motion seeking the extension, however, failed to list all of the millages and consequently not all of the millages sought to be rededicated have actually been rededicated." Therefore, it is clear that any error in the omission of the millage extension was not my error but the error of the attorneys. I wanted to be sure to set the record straight in this regard.

No new motion or order was ever submitted to me to correct the earlier omission. Nor was it included in Special Master McCutcheon's recommendations to me. As a matter of fact, the recommendation of Special Master McCutcheon appears as Exhibit "C" to my opinion of June 27, 1989, and is set out as follows:

The parties' Agreement to petition for rededication of millages erroneously omitted from the petitions of December, 1986, and January, 1987, should be granted only on condition that this court's

orders regarding desegregation requirements be accepted and implementation commenced no later than July 1, 1989. Without such conditions the court will place the public in a position of having millages rededicated without assurance that the money raised will be used to comply with order of the court.

716 F.Supp. 1162, 1188 (E.D.Ark.1989).

His conditions were not complied with. No recommendation concerning millage extensions was included in his October 4, 1989 recommendations. I have conferred with my law clerk, Mrs. Deere who has assisted me in this case, and she has no recollection of such a motion or order being given to her.

For your information, at the time I extended these millages, there was an Eighth Circuit precedent for my action. In view of the Supreme Court's later decision in *Jenkins*, it would appear that it is now highly doubtful whether it can be done under current law. You will recall in *Jenkins* the Court said a judge could not directly impose millage but could only order the school board to do so. The problem in Arkansas is that school boards, without a vote of the people, probably are not authorized to extend millages.

Enclosed also is a copy of the colloquy of September 27, 1989 between the attorneys and the Special Master with regard to the problem.

> Very truly yours,
> /s/ Henry Woods
> Henry Woods

enclosure