971 F.2d 160
 76 Ed. Law Rep. 743
 LITTLE ROCK SCHOOL DISTRICT, Appellant,
Anne Mitchell; Bob Moore; Pat Gee; Pat Rayburn; Mary J.
Gage; North Little Rock Classroom Teachers Association;
Pulaski Association of Classroom Teachers; Little Rock
Classroom Teachers Association; Alexa Armstrong; Karlos
Armstrong; Ed Bullington; Khayyam Davis; Janice Dent;
John Harrison; Alvin Hudson; Tatia Hudson; Milton
Jackson; Lorene Joshua; Leslie Joshua; Stacy Joshua;
Wayne Joshua; Katherine Knight; Sara Matthews; Becky
McKinney; Derrick Miles; Janice Miles; John M. Miles;
NAACP; Joyce Person; Brian Taylor; Hilton Taylor; Parsha
Taylor; Robert Willingham; Tonya Willingham, Intervenors,
v.
PULASKI COUNTY SPECIAL SCHOOL DISTRICT # 1, Appellant,
North Little Rock School District; Leon Barnes; Sheryl
Dunn; Mac Faulkner; Richard A. Giddings; Marianne Gosser;
Don Hindman; Shirley Lowery; Bob Lyon; George A.
McCrary; Bob Moore; Steve Morley; Buddy Raines; David
Sain; Bob Stender; Dale Ward; John Ward; Judy Wear;
Grainger Williams,
Philip E. Kaplan; Janet Pulliam; John Bilheimer, Movants.
LITTLE ROCK SCHOOL DISTRICT;
Anne Mitchell; Bob Moore; Pat Gee; Pat Rayburn; Mary J.
Gage; North Little Rock Classroom Teachers Association;
Pulaski Association of Classroom Teachers; Little Rock
Classroom Teachers Association; Intervenors,
Alexa Armstrong; Karlos Armstrong, Appellants,
Ed Bullington, Intervenor,
Khayyam Davis, Appellant,
Janice Dent; John Harrison, Intervenors,
Alvin Hudson; Tatia Hudson, Appellants,
Milton Jackson, Intervenor,
Lorene Joshua; Leslie Joshua; Stacy Joshua; Wayne Joshua,
Appellants,
Katherine Knight, Intervenor,
Sara Matthews, Appellant,
Becky McKinney, Intervenor,
Derrick Miles; Janice Miles; John M. Miles; NAACP, Appellants,
Joyce Person, Intervenor,
Brian Taylor; Hilton Taylor; Parsha Taylor; Robert
Willingham; Tonya Willingham, Appellants,
v.
PULASKI COUNTY SPECIAL SCHOOL DISTRICT # 1, Appellant,
North Little Rock School District; Leon Barnes; Sheryl
Dunn; Mac Faulkner; Richard A. Giddings; Marianne Gosser;
Don Hindman; Shirley Lowery; Bob Lyon; George A.
McCrary; Bob Moore; Steve Morley; Buddy Raines; David
Sain; Bob Stender; Dale Ward; John Ward; Judy Wear;
Grainger Williams,
Philip E. Kaplan; Janet Pulliam; John Bilheimer, Movants.
LITTLE ROCK SCHOOL DISTRICT, Appellant,
Anne Mitchell; Bob Moore; Pat Gee; Pat Rayburn; Mary J.
Gage; North Little Rock Classroom Teachers Association;
Pulaski Association of Classroom Teachers; Little Rock
Classroom Teachers Association; Alexa Armstrong; Karlos
Armstrong; Ed Bullington; Khayyam Davis; Janice Dent;
John Harrison; Alvin Hudson; Tatia Hudson; Milton
Jackson; Lorene Joshua; Leslie Joshua; Stacy Joshua;
Wayne Joshua; Katherine Knight; Sara Matthews; Becky
McKinney; Derrick Miles; Janice Miles; John M. Miles;
NAACP; Joyce Person; Brian Taylor; Hilton Taylor; Parsha
Taylor; Robert Willingham; Tonya Willingham, Intervenors,
v.
PULASKI COUNTY SPECIAL SCHOOL DISTRICT # 1; North Little
Rock School District; Leon Barnes; Sheryl Dunn; Mac
Faulkner; Richard A. Giddings; Marianne Gosser; Don
Hindman; Shirley Lowery; Bob Lyon; George A. McCrary;
Bob Moore; Steve Morley; Buddy Raines; David Sain; Bob
Stender; Dale Ward; John Ward; Judy Wear; Grainger Williams,
Philip E. Kaplan; Janet Pulliam; John Bilheimer, Movants.
 Nos. 91-3317, 91-3833, 91-3840.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 19, 1992.
Decided Aug. 3, 1992.
 
 Norman J. Chachkin, New York City, argued (John W. Walker, Alston Jennings, M. Samuel Jones, III, and Christopher Heller, Little Rock, Ark., on the brief), for appellant.
 There were no appellees in this appeal.
 Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 HEANEY, Senior Circuit Judge.
 
 
 1
 Two questions are at issue in this appeal. First, did the district court err in refusing to extend certain millages designed to assist in funding desegregation measures in the three school districts in Pulaski County, Arkansas? Second, should the district court have permitted the parties to review, analyze, question and object to the proposed budget for the Office of Desegregation Monitoring? We answer both questions in the affirmative, and therefore reverse and remand.
 
 I. THE OMITTED MILLAGES
 
 2
 Three Arkansas school districts--Little Rock School District No. 1 (LRSD), Pulaski County Special School District No. 1 (PCSSD), and North Little Rock School District (NLRSD)--are currently operating under a desegregation settlement agreement that the district court approved as written on January 18, 1991. Item M of the settlement agreement provides:
 
 
 3
 The court ordered on December 29, 1986 (reinstated Jan. 7, 1987) the rededication of certain millages of the Districts. It was the intent of the Districts and the court that all millages due to expire before the year 2007 be rededicated. The motion seeking the extension, however, failed to list all of the millages and consequently not all of the millages sought to be rededicated have actually been rededicated. The parties agree that the court's order of December 29, 1986 (reinstated January 7, 1987) should be corrected to include all millages of the Districts which would otherwise expire before or during the year 2007. Pursuant to this settlement, a corrected order has been submitted to the court for approval following final approval of the settlement. Upon approval, the order will be delivered to the responsible county officials.
 
 
 4
 On July 24, 1991, the parties to the settlement agreement submitted a proposed order to the district court, the effect of which would have been to implement Item M. On November 15, 1991, the district court issued an order declining to extend the millages. 778 F.Supp. 1013 (E.D.Ark.1991). LRSD, PCSSD, and a group of intervenors representing the injured class of African-American schoolchildren and citizens ("the Joshua intervenors") appeal.
 
 A. Historical Review
 
 5
 A brief review of the more recent desegregation litigation involving the parties to this appeal will be helpful in understanding the omitted millages issue. In April 1984, the district court found that PCSSD, NLRSD, and the Board of Education of the State of Arkansas (State Board) had contributed to the continuing segregation of the Little Rock schools and ordered the consolidation of LRSD, PCSSD, and NLRSD. Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 584 F.Supp. 328, 351-52 (E.D.Ark.1984). Several months later, following hearings on the remedial aspects of the case, the district court ordered the implementation of a consolidation plan that included the establishment of a uniform millage rate for the consolidated district. Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 597 F.Supp. 1220, 1226 (E.D.Ark.1984).
 
 
 6
 PCSSD, NLRSD, and the State Board appealed to this court. The Joshua intervenors filed a brief in support of the district court's judgment, and the United States filed an amicus curiae brief in general support of appellants. We agreed with the district court that interdistrict violations had occurred, but held that those violations could be remedied by less intrusive measures than consolidation. These included limited adjustments to boundaries, correction of segregative practices within each district, improving the quality of nonintegrated schools in LRSD, providing compensatory and remedial programs for black children in all three school districts, establishing a limited number of magnet schools, and requiring the State Board to participate in developing and funding these programs. Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 778 F.2d 404 (8th Cir.1985), cert. denied, 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1985).
 
 
 7
 On December 24, 1986, at the suggestion of the district court, a motion to extend certain millages for the three school districts was filed. The millages were reduced to reflect the operation of Amendment 59 of the Arkansas Constitution. As reduced, the millages were extended as follows:
 
 LRSD
 1987"88 1.64
 1989"90 .55
 1993"94 .55
 
 8
 ----
 
 Total 2.74
 PCSSD
 1986"87 3.53
 1993"94 6.46
 
 9
 ----
 
 Total 9.99
 NLRSD
 1987"88 3.14
 1989"90 .79
 1995"96 4.98
 
 10
 ----
 
 Total 8.91
 
 11
 The motion stated that continuation of these millages would not constitute an increase in the amount or the rate of the tax. The motion further stated that "[t]he court of appeals has authorized this court to 'consider whatever other financial measures it or the parties consider necessary....' This rededication is necessary to effectuate a meaningful plan of desegregation in each of the districts."
 
 
 12
 On December 29, 1986, the district court, stating that the desegregation plans would require extraordinary expenditures in each of the school districts, issued an order extending the millages listed above. The order provided that the millages could be converted at any time prior to 2007 upon notice to tax or collection authorities and to the court.[1] Meanwhile, the parties negotiated a comprehensive settlement agreement, including Item M, which they submitted to the district court on March 31, 1989.[2] On May 10, 1989, the Special Master appointed by the district court recommended that the district court approve the settlement agreement subject to certain conditions, one of which was that
 
 
 13
 [t]he parties' Agreement to petition for rededication of millages erroneously omitted from the petitions of December, 1986, and January, 1987, should be granted only on condition that this court's ordered [sic] regarding desegregation requirements be accepted and implementation commenced no later than July 1, 1989. Without such conditions the court will place the public in a position of having millages rededicated without assurance that the money raised will be used to comply with orders of the court.
 
 
 14
 Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 716 F.Supp. 1162, 1188 (E.D.Ark.1989).
 
 
 15
 On June 27, 1989, the district court disapproved the settlement agreement primarily because it was not satisfied that the Arkansas Legislature had allocated funds sufficient to fully implement the segregation remedy. Thereafter, the legislature passed the necessary legislation and the settlement agreement was resubmitted to the Special Master, who asked the parties to prepare a new order extending the millages. The parties submitted the revised settlement agreement to the Special Master on September 28, 1989. This revision also included Item M. The Special Master approved the agreement, noting that language changes made in the agreement had mooted his previous concerns about the use of revenues generated by rededicated millages.
 
 
 16
 On December 11, 1989, the district court approved the settlement agreement subject to qualifications that, while important, are not relevant to this appeal. See Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 726 F.Supp. 1544, 1549 (E.D.Ark.1989). All parties to the settlement agreement appealed to this court. We reversed the judgment of the district court and directed that court to approve the settlement plans and settlement agreement as submitted by the parties without the qualifications and limitations that the district court imposed. Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 921 F.2d 1371, 1394 (8th Cir.1990). We noted that the plan was a comprehensive one and that the legislature's enactment of the settlement, which voluntarily committed the state to pay in excess of $100 million toward desegregation costs, was without precedent. No appeal was taken from our decision to the United States Supreme Court.
 
 
 17
 On July 24, 1991, the parties submitted a petition to the district court, now presided over by a different judge, requesting the court to implement the settlement agreement as approved by our court. See id. The parties asked the court to enter an order rededicating those millages in the LRSD, PCSSD, and NLRSD due to expire on or before December 31, 2007 for use by the school districts for various expenditures, "provided such expenditures relate to the implementation of the district's desegregation plan, compliance with the orders of the Court or with the continuation of desegregation efforts previously approved by the Court." The district court declined to enter the order, stating that the failure to extend the omitted millages was not simply a clerical error. Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 778 F.Supp. 1013, 1016-17 (E.D.Ark.1991). Furthermore, even though this court had approved the settlement agreement in its entirety, we had not specifically mentioned Item M in our opinion. The district court therefore thought it "unwise to infer from the court of appeals' approval of the settlement agreement that this Court is required to extend the omitted millages." Id. at 1017. Finally, the district court determined that to extend the millages would be to impose a tax in a manner prohibited by Missouri v. Jenkins, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990).B. Discussion
 
 
 18
 What the district court failed to recognize is that we directed it to "approve the parties' settlement agreement as written by them." Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 921 F.2d 1371, 1394 (8th Cir.1990) (emphasis added). "[A]s written by them," the settlement agreement included Item M, which corrected the problem of the omitted millages. The extension of the omitted millages is therefore settled as the law of the case. The law-of-the-case doctrine "prevents repeated litigation of the same issue and promotes uniformity of decision." Liddell v. State of Missouri, 731 F.2d 1294, 1304-05 (8th Cir.1984). "We will reconsider a previously decided issue only on a showing of clear error and manifest injustice," id., or if the facts of the case have changed substantially since the first appeal. See Continental Bank & Trust Co. v. American Bonding, 630 F.2d 606, 608 (8th Cir.1980).
 
 
 19
 The district court did not allege that our previous opinion resulted in clear error or manifest injustice; nor have the facts of the case changed. The only question, therefore, is whether we have previously ordered the extension of the omitted millages; there can be no question that we have. The parties were aware of the omitted millages and included Item M in the settlement agreement to correct the omission. The Special Master approved the agreement, including Item M, as did the district court.[3] Most importantly, when the matter came before this court on appeal from the district court, we held that the settlement agreement as drafted by the parties met constitutional standards and directed the district court to approve the settlement agreement as submitted by the parties. Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 921 F.2d 1371, 1394 (8th Cir.1990). We do not, therefore, agree with the district court that it is necessary to infer an approval of Item M from our earlier opinion. Our language was clear in its approval of the entire agreement, including Item M. No petition for a rehearing en banc was filed with our court, and no appeal was taken to the United States Supreme Court.
 
 
 20
 Finally, all parties, as well as the district court, recognized that the cost of implementing the plan would be considerable because the plan was a comprehensive one designed not only to further desegregate the three school districts, but also to establish magnet schools and to provide remedial and compensatory programs. To this end, the state legislature committed the State of Arkansas to fund the program for more than $100 million. The Legislature's action contemplated that the entire settlement agreement, including Item M, would be approved. The omitted millages will provide an additional $219 million between now and 2007 for desegregation purposes, funds that the parties agree are necessary if the three school districts are to achieve a unitary status.[4] The district court appears to suggest in its opinion that the scope of the remedy can be limited to reflect the loss of the anticipated funds. We cannot accept the suggestion that a remedy can be so limited once this court has found it to be constitutional. Such a course would be contrary to what we said in the opinion and contrary to law.[5]
 
 
 21
 We therefore reverse the district court and remand to it with directions to correct its order of December 29, 1986 (reinstated January 7, 1987). The corrected order shall extend all millages of LRSD, NLRSD, and PCSSD that would otherwise expire before or during the year 2007, as provided in Item M of the settlement agreement that the district court approved on January 18, 1991.
 
 
 22
 II. BUDGET FOR THE OFFICE OF DESEGREGATION MONITORING (ODM)
 
 
 23
 In approving the settlement agreement, this court directed the district court to monitor closely the parties' compliance with the settlement plans. Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 921 F.2d 1371, 1388, 1394 (8th Cir.1990). We further directed the district court
 
 
 24
 to vacate its order creating the Office of Metropolitan Supervisor. This office is to be replaced by an office of Desegregation Monitoring, to be staffed by a Monitor and such additional personnel as the District Court may deem appropriate, its funding and budget to be within the control of that Court.
 
 
 25
 Id. at 1394 (emphasis added).
 
 
 26
 Pursuant to our opinion, the district court asked the director of ODM to prepare a budget for the year 1991-92 fiscal year. After due consideration, the court approved a budget. The parties thereafter filed a motion with the district court contending that they were denied due process because they were afforded no opportunity to "review, analyze, question, make recommendations concerning or objections regarding the budget proposal as a whole or any of its constituent parts." The district court denied relief, stating at a hearing on August 7, 1991 that
 
 
 27
 [t]he Eighth Circuit order, though, also said that it was up to this court and the discretion of this court to establish a budget for that office.... I am very, very aware of the fact that taxpayers' precious dollars are going into this monitoring function.... But I believe that in absence of showing an abuse of discretion, the parties won't be able to touch this budget.
 
 
 28
 The court also noted that the Arkansas Legislative Audit Committee would conduct an audit of the ODM, and that copies of the audit would be available to the public.
 
 
 29
 The parties agree that the district court has broad discretion with respect to the operation of the ODM, but argue that they should be provided some meaningful information about the ODM budget before it is approved and be given the opportunity to bring any concerns or suggestions they might have to the attention of the district court. We agree.
 
 
 30
 We re-emphasize the importance of the monitoring function and reassert our view that the district court must have broad discretion in preparing and implementing a budget for the ODM. Having said this, we direct the district court to provide appellants a reasonable opportunity to review future ODM budgets before they are given final approval, and to permit appellants to promptly review, analyze, question, and make recommendations concerning or objections regarding the budget and elements thereof. We leave to the wise discretion of the district court to determine those rare occasions when issues are of such importance that an evidentiary hearing is required. Hearings, when required, must be held promptly so that the important monitoring function will not be delayed or hampered. On remand, the district court will give the parties a chance to object to the current ODM budget. If objections are made, the court should rule on them, and its rulings will be reviewable for abuse of discretion only.
 
 
 31
 We reverse and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 Article 14, section 3 of the Arkansas Constitution provides the following mechanism for setting the annual tax rate in each school district:
 [S]chool districts are hereby authorized to levy by a vote of the qualified electors respectively thereof an annual tax for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness.... If a majority of the qualified voters in said school district voting in the annual school election shall approve the rate of tax so proposed by the Board of Directors, then the tax at the rate so approved shall be collected as provided by law. In the event a majority of said qualified electors shall disapprove the proposed rate of tax, then the tax shall be collected at the rate approved in the last preceding annual school election.
 See also Ark.Stat.Ann. § 26-80-102 (1991).
 
 
 [2]
 While the settlement agreement contained a number of significant nonfinancial aspects, its most important provisions related to the financial responsibility of the State. For a general description of the agreement, see Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 921 F.2d 1371, 1380-81 (8th Cir.1990)
 
 
 [3]
 Despite the fact that the district court imposed certain qualifications and limitations that this court later reversed, it approved the settlement agreement as a whole, including Item M. See Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 716 F.Supp. 1162, 1171 (E.D.Ark.1989)
 
 
 [4]
 If extended to the year 2007, the omitted millages would raise an additional $73,793,726 for LRSD; $67,240,888 for PCSSD; and $78,041,985 for NLRSD. These figures assume that the 1991 assessed valuation in each district will remain constant and that all taxes owed will be collected
 
 
 [5]
 We note further that the district court did not raise any concerns regarding the constitutionality of extending those millages not omitted. The omitted millages are not, in our view, constitutionally different from the previously included millages