# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

————————

No. 96-3841EA

————————

Katherine Knight; North Little     *
Rock Classroom Teachers     *
Association; Pulaski     *
Association of Classroom     *
Teachers; Little Rock Classroom     *
Teachers Association;  Ed     *
Bullington; and John Harrison,     *   On Appeal from the United
          *   States District Court
      Appellants,     *   for the Eastern District
          *   of Arkansas.
   v.     *
          *
          *
Pulaski County Special     *
School District,     *
          *
      Appellee.     *

————————

Submitted:  February 25, 1997

Filed:  May 1, 1997

————————

Before RICHARD S. ARNOLD, Chief Judge, HEANEY and WOLLMAN, Circuit Judges.

————————

RICHARD S. ARNOLD, Chief Judge.

In 1992, the long-running desegregation case involving the three school districts in Pulaski County, Arkansas, was settled.  A consent decree, embodying the agreement of all the parties, was entered on April 29, 1992.  Under this Court's opinion in Little Rock School District v. Pulaski County Special School District, 921

F.2d 1371 (8th Cir. 1990), the District Court was given the job of monitoring the settlement agreement to ensure that all parties complied with it. The question presented in this case is whether the District Court had the authority, as an aspect of this enforcement responsibility, to forbid a strike by the teachers of the Pulaski County Special School District.

On August 19, 1996, the District's teachers, represented by the Pulaski Association of Classroom Teachers, went on strike. Three days later, on August 22, certain parents of PCSSD students filed suit in the Chancery Court of Pulaski County, Arkansas, and sought a preliminary injunction against the strike, alleging state-law grounds in support of their request. The next day, after a hearing on the motion, the Chancery Court denied injunctive relief on the ground that no showing of irreparable harm had been made. Wilson v. Pulaski Ass'n of Classroom Teachers, No. IJ96-5788 (slip op. Ark. Ch. Ct. Aug., 23, 1996). Another hearing was scheduled for September 19. This state-court case is now pending before the Supreme Court of Arkansas on PCSSD's appeal.

In the meantime, on August 27, the District itself made a motion in the federal district court for injunctive relief against the strike. School opened on August 28. The District used teachers who were willing to cross the picket line and others to staff its classrooms. On that same day, the District Court held a hearing on PCSSD's motion. At the conclusion of the hearing, the Court ordered the teachers to return to work on September 3. The teachers complied with this order, and PCSSD's schools have been open ever since.

At the heart of this case lies the question of the District Court's authority to enjoin the strike. The teachers and their Union were parties to the school-desegregation case, having been

-2-

allowed to intervene. See <u>Little Rock School District v. Pulaski County Special School District</u>, 839 F.2d 1296, 1314-15 (8th Cir.), <u>cert. denied</u>, 488 U.S. 869 (1988). Like all other parties, they agreed to the settlement agreement embodied in the consent decree entered in 1992. The difficulty is that the settlement agreement says nothing about the teachers' right to strike. The job of the District Court is to enforce the settlement agreement. But since the agreement is silent on the subject of a strike by the teachers, the authority of the District Court to issue its order must be found elsewhere, if at all.

The fact that the case has been settled does not make the three school districts involved wards of the Court. They are not in receivership. Except as provided in the settlement agreement, or by reasonable implication therefrom, the rights and duties of the three school districts and those with whom they do business, including employees and organizations of employees, are governed by other applicable law, primarily state law. As we explained in 1988, a federal district court does have remedial authority, in necessary cases, to modify or even abrogate agreements that perpetuate segregation or impede a desegregation plan. Such action, however, can be taken only "after an evidentiary hearing and upon a finding that the change is essential to the desegregation remedy," 839 F.2d at 1315, unless, of course, the parties have agreed otherwise, an event which, as we have explained, has not occurred in this case.

It is suggested, though without much force, that the failure of PCSSD to increase teachers' salaries may be a violation of state law, Act 917 of 1995, Ark. Code. Ann. § 6-17-1001 (Michie 1995). It is also suggested that the collective-bargaining agreement between the teachers and PCSSD may, by implication, forbid a strike, because the agreement contains certain procedures for

resolving disputes, including declaration of an impasse and factfinding by some neutral person. These arguments have nothing to do with the settlement agreement and depend on state law. Likewise, the suggestion on the other side that state law forbids strikes by public employees raises no issue within the particular competence of the federal courts. Because this case has been settled, the settlement agreement becomes, in a sense, a particularization of federal law applicable to these parties. The jurisdiction of the District Court to enforce that agreement does not include the authority to resolve other disputes among the parties or to adjust their legal rights and responsibilities arising from other sources. No independent basis of jurisdiction has been suggested. In these circumstances, and especially in view of the fact that an earlier-filed case is now pending in the state courts, we think it best to leave issues of state law and contract interpretation to those courts.

PCSSD argues that if it cannot hold school at all, it cannot carry out the desegregation plan, and this is perhaps the most appealing argument the school district has. The trouble with the argument is that it proves too much. If, for example, the school district's water bill were raised to an exorbitant level, making it financially difficult or impossible to operate, we do not think that the District Court, as an aspect of its authority to monitor the settlement agreement, would have power to order the utility furnishing the water ro reduce its rates. No doubt the example is an extreme one, but it makes the point. The teachers, unlike the putative water utility, are parties to the settlement agreement, but the agreement does not address their right to strike. Indeed, it refers to existing collective-bargaining arrangements in such a way as to reinforce, rather than abrogate, their effectiveness. In addition, as a matter of fact, the school district was not rendered inoperable by the strike, and was making plans to open its doors

without the help of the striking teachers when the District Court issued its injunction.  The operation of the schools would unquestionably have been impaired to some extent, but we do not think that the proof was sufficiently striking to justify the action taken.  So long as the settlement agreement is complied with, the school district must make its own way through the ordinary difficulties of life as an employer.  Another case would be presented if the teachers were to take action pointedly aimed at interfering with desegregation as such (to use another extreme example in order to make a point).

Finally, and perhaps as an afterthought, the school district asserts that the injunction against the strike can be upheld as a modification of the settlement agreement.  The District Court of course has power, after a proper showing, to modify the settlement agreement.  In theory, such power could be exercised in such a way as to affect the rights of the teachers.  This suggestion, however, is wholly foreign to the present case.  No one asked the District Court to modify the settlement agreement, it did not say that it was modifying the agreement, and the agreement in fact stands unmodified to this day.

We understand the concerns that led the District Court to protect PCSSD and its school children from the effects of a teachers' strike.  But we cannot agree that the settlement agreement, even by implication, took away the right to strike, assuming such a right exists under state law, nor can we find any other source of authority for the action the District Court took.  The order granting an injunction against the teachers' strike is therefore

Reversed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.